FILED

2011 APR -6 AM 11:45

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ alf _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE M. MARGARET McKEOWN)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DONNY LOVE, SR.,<br><br>                Defendant. | CASE NO. 10cr2418-MMM<br><br>**ORDER**<br>DENYING DONNY LOVE SR.'S MOTIONS TO DISMISS THE SUPERSEDING INDICTMENT AS VINDICTIVE AND TO SUPPRESS STATEMENTS |

    Donny Love, Sr. filed motions to dismiss the superseding indictment as vindictive .and to suppress statements he made during an interview with federal agents at California's Donovan State Prison on June 14, 2010. The court held a hearing on March 11, 2011 to consider the motions to dismiss and to suppress.

    The government represented in its responding brief that it will not introduce any statements from the June 14, 2010 interview in its case in chief. In light of that representation, at the hearing the court denied as moot the motion to suppress the June 14, 2010 statements. Both in his reply brief on the motion to suppress and at the hearing, Love also moved to suppress statements made to the same investigators during an earlier interview held at Donovan State Prison on June 8, 2010. The government came to the March 11 hearing prepared to present argument and evidence on that aspect of the belated suppression motion.

Love's counsel indicated he was ready proceed with the hearing and did not object to going forward. Accordingly, during the March 11, 2011 proceedings, the court held an evidentiary hearing on the motion to suppress statements made at the June 8, 2010 interview. Having considered the briefing and arguments of counsel, including Love's declaration, and the evidence presented at the March 11, 2011 hearing, the court denies the motion to dismiss and the motion to suppress for the following reasons.

I.     **Motion to Dismiss the Superseding Indictment as Vindictive**

The superseding indictment filed against Love on December 9, 2010 added two charges to the original indictment. Love argues that these additional charges raise a presumption that the government acted vindictively in response to his exercise of various pre-trial rights, including the right to a jury trial.

The government violates due process if it files additional charges "to penalize [the defendant] for exercising a protected statutory or constitutional right." United States v. Jenkins, 504 F.3d 694, 699 (9th Cir. 2007). Love "may establish prosecutorial vindictiveness" of this sort either "by producing direct evidence of the prosecutor's punitive motivation" or by "show[ing] that the [additional] charges 'were filed because [he] exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness.'" Id. (quoting United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir. 1982)). Because Love has presented "no direct evidence of the government's improper motivation," only the appearance of vindictiveness is at issue here. See id.

To establish that appearance, Love "must demonstrate a *reasonable likelihood* that the government would not have brought the [additional] charges had [he] not elected to" exercise his rights. Id. at 700. If Love satisfies that burden, a presumption of vindictiveness applies, and the burden shifts to the government to present "objective evidence justifying the prosecutor's action" and to "show that the additional charges did not stem from a vindictive motive, or were justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness." Id. at 701 (internal quotation marks and alterations omitted).

Love has not met his burden of showing a reasonable likelihood of vindictiveness. He

argues, without elaboration, that "the new charges . . . are based on [his] intention [to exercise] his constitutional right to a jury trial." Mot. to Dismiss at 4. This argument is foreclosed by the Supreme Court's decision in United States v. Goodwin, which held that "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges . . . that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." 457 U.S. 368, 384 (1982). Thus, to show that new charges resulted from a jury trial demand, Love must "prove objectively that the prosecutor's charging decision was motivated by a desire to punish him." Id. Love has presented no such evidence, and Goodwin bars his claim that the superseding indictment represents a vindictive response to his jury trial demand.

      Love also suggests that the superseding indictment constitutes retaliation for his exercise of other, unspecified "constitutional and statutory rights," because it "was only after" he exercised those rights that the government filed the new charges. See Mot. to Dismiss, at 5. In the context of a superseding indictment filed before trial, however, timing is not enough; a presumption of vindictiveness cannot be established simply because "the prosecution adds charges pretrial after a defendant asserts some right." United States v. Austin, 902 F.2d 743, 745 (9th Cir. 1990); see also, e.g., Goodwin, 347 U.S. at 381 (suggesting that vindictiveness is unlikely to arise from pretrial rights that, like "motions . . . to challenge the sufficiency and form of an indictment . . . [and] to obtain access to government files," are routinely invoked). The mere fact that the superseding indictment followed Love's exercise of pretrial rights therefore does not raise a presumption of vindictiveness.

      The only other factual support Love offers in support of his motion is the statement that "[t]he additional counts were based on conduct occurring approximately two years before the original indictment." Mot. to Dismiss, at 1. As Love knows, however, the *original* indictment in this case was filed in June 2010, over two years after the bombing with which Love is charged. In view of the chronology of this case, including prior litigation over grand jury matters, the lapse of time between the conduct charged and the issuance of the superseding indictment does not give rise to a presumption of vindictiveness. See United

States v. Jarrett, 447 F.3d 520, 530 (7th Cir. 2006) ("Waiting to build a stronger case before pursuing an indictment is evidence of responsible, rather than vindictive, government behavior.").

Finally, Love argues that the situation here is analogous to Jenkins and to United States v. Hollywood Motor Car Co., 646 F.2d 384 (9th Cir. 1981), two cases in which the Ninth Circuit concluded that the prosecution had acted vindictively. Both of those cases, however, are easily distinguishable. In Jenkins, the defendant was indicted on one set of charges, but after Jenkins presented a "reasonably credible defense" to those charges at trial, the government filed a second indictment it admittedly could have brought much earlier. See 504 F.3d at 698-700. These facts raise a strong inference that the government wanted a second bite at the apple, but even without that inference, Jenkins would be distinguishable for the simple reason that vindictiveness "is far more likely to occur . . . after the initial prosecution than in a pretrial setting." United States v. Martinez, 785 F.2d 663, 669 (9th Cir. 1986).

Hollywood Motor Car, meanwhile, did address additional charges added before trial but after the defendants filed a motion to transfer venue. See 646 F.2d at 385.[1] Although Love previously filed a venue motion in this case, Hollywood Motor Car presents a very different scenario. Crucially, the prosecutor in that case "threatened that the Government would add new counts to the indictment if [the defendants] pursued their motion for change of venue." Id. The defendants filed the motion, which succeeded, and the prosecutor carried through on the threat. See id. Because of this "undisputed express threat," the Ninth Circuit applied a presumption of vindictiveness. See id. at 388; see also DeMarco, 550 F.2d at 1226-28 (applying the presumption to a functionally identical set of facts). Here, by contrast, there is no evidence that the government threatened Love with increased charges if he exercised his

---

[1] The Supreme Court subsequently vacated the Ninth Circuit's opinion in Hollywood Motor Car on jurisdictional grounds. See 458 U.S. 263 (1982). The court nevertheless addresses Love's argument because the holding in Hollywood Motor Car rested directly on United States v. DeMarco, 550 F.2d 1224 (9th Cir. 1977), which has never been expressly overruled.

rights. Love instead relies on the timing of the indictment, and under Arnold, that timing provides an insufficient basis for a presumption of vindictiveness.

Because Love has not demonstrated a reasonable likelihood that the new charges against him are vindictive, the motion to dismiss the superseding indictment is denied.

## II.   Motion to Suppress

Love seeks to suppress the statements he made during a June 8, 2010 interview with FBI agent Justin Zuccolotto and ATF agent Brad Galvan. Love concedes that Zuccolotto read Love his Miranda rights on June 8 but argues that he never waived those rights. "To admit an inculpatory statement made by a defendant during custodial interrogation, the defendant's 'waiver of Miranda rights must be voluntary, knowing, and intelligent.'" United States v. Shi, 525 F.3d 709, 727 (9th Cir. 2008) (quoting United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998)). "The prosecution bears the burden of proof, and there is a presumption against waiver." Id. at 727-28.

Love's argument implicates the sequence of events at the June interview, which Zuccolotto taped. The government introduced a copy of that tape and a transcript of its contents into evidence at the March 11 hearing. Both the recording and the transcript reveal that, after Zuccolotto read Love his rights, Zuccolotto asked "Do you waive these rights?" Gov't Ex. 1A, at 6. Love responded by saying "I'll pass." Id. Zuccolotto sought a clarification, asking "You will waive?" Id. At that point, the transcript indicates that Love answered "Yeah." See id. Zuccolotto then gave Love a form to "[f]ill . . . out and sign," and after the agents joked about a particular state prison, Zuccolotto told Love to "[s]ign right there," which he did. Id. The interview then continued for nearly an hour and a half.

In a declaration, Love states that when he said "I'll pass," he meant that he "was not waiving [his rights]." See Dkt. No. 56-1, at 1. Love further declares that "[t]he agents . . . asked [him] to sign a form which was blank above [his] signature," and that he "did not intend to waive [his] Fifth Amendment right to remain silent or [his] Sixth Amendment right to an attorney prior to or during questioning." Id. In response, the government submitted into evidence the original copy of an "advice of rights" form—dated June 8, 2010 and bearing

Love's signature. See Gov't Ex. 2. The top half of the form contains a written statement of Miranda rights. In the bottom half, just above Love's signature, the form says "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." See id. Love signed the form, and Zuccolotto and Galvan signed the form as witnesses. See id.

The government called Zuccolotto to testify at the March 11 evidentiary hearing. The court finds that Zuccolotto was credible and forthright in his testimony. Zuccolotto testified about the general circumstances and timing of the June 8, 2010 interview. See 3/11/11 Hearing Tr. 15:25-16:25, 23:10-25:15. According to Zuccolotto, Love seemed sober and coherent during the interview and had no "problems expressing himself," and the interview "was conversational." Id. 23:20-24:1, 24:9-10; see also id. 24:7-8 (stating that Zuccolotto never "raise[d his] voice during the interview"). Zuccolotto more specifically spoke to the portion of the interview concerning Love's Miranda rights. See id. 18:23-23:1. He testified that, as reflected on the transcript, Love answered "Yeah" in response to the question "You will waive?," and that Love nodded while giving that answer. See id. 20:16-25. Zuccolotto also stated that the waiver form introduced into evidence was the same form that Love signed on June 8, that the form was not concealed when Love signed it,[2] and that Love appeared to read the form before signing it. See id. 19:9-15, 22:4-8, 29:6-9. Finally, Zuccolotto said that Love never indicated that he did not understand his rights and never requested an attorney or asked to end the questioning. See id. 23:10-17, 24:11-16. No one else was called to testify

---

[2] On cross-examination, Love's counsel asked Zuccolotto if he had spoken with Galvan about hiding the waiver form before Love entered the room. Zuccolotto initially responded that he did not recall doing so and later stated his belief that no such conversation occurred. See 3/11/11 Hearing Tr. 28:7-17. The recording of the interview, however, reveals that Zuccolotto told Galvan to "keep that underneath for now" and then repeated "keep that hidden for now, the Advice of Rights." Galvan responds by saying "Okay." See also Gov't Ex. 1A, at 2 (including part of this exchange, but marking "keep that hidden for now" as unintelligible). Zuccolotto's instruction to Galvan nonetheless suggests only that the agents did not want Love to see the waiver form when he entered the room, not that they wished to conceal the form's true nature from Love when he signed it. There is no evidence that the form was concealed when presented to Love for signature.

at the evidentiary hearing, and Love introduced no evidence beyond his declaration.

The government has satisfied its burden of demonstrating that Love voluntarily, knowingly, and intelligently waived his <u>Miranda</u> rights. Although Love's initial response of "I'll pass" to the question of whether he would waive his rights was ambiguous, that response was not an unequivocal or clear invocation of his <u>Miranda</u> rights, and Zuccolotto immediately asked the legitimate clarifying question "You will waive?" See <u>United States v. Rodriguez</u>, 518 F.3d 1072, 1080 (9th Cir. 2008) ("Prior to obtaining an unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation."); cf. <u>Anderson v. Terhune</u>, 516 F.3d 781 (9th Cir. 2008) (en banc) (holding that the statement "I plead the Fifth" is an unequivocal invocation of the Fifth Amendment right against self-incrimination). Zuccolotto's uncontradicted testimony was that Love then verbally waived his rights. Zuccolotto's testimony, the waiver form bearing Love's signature, and Zuccolotto's statement that the form was not concealed when Love signed it all support the court's conclusion that Love knew he was waiving his <u>Miranda</u> rights and voluntarily, knowingly, and intelligently intended to do so. See, e.g., <u>United States v. Brobst</u>, 558 F.3d 982, 997-98 (9th Cir. 2009) (relying on a written waiver); <u>United States v. Calise</u>, 996 F.2d 1019, 1022 (9th Cir. 1983) (finding waiver on the basis of oral statements). Love does not argue that any waiver was involuntary, and the recording and transcript of the June 8 interview reveal no coercion by the agents and no other indications that Love's waiver was anything but voluntary. Love's motion to suppress statements made during the June 8, 2010 interview is accordingly denied.

**IT IS ORDERED** that Love's motions to dismiss the superseding indictment as vindictive and to suppress statements made during the June 8, 2010 interview are **DENIED**. Love's motion to suppress statements made during the June 14, 2010 interview is **DENIED AS MOOT**.

Dated: March 31, 2011

M. Margaret McKeown
HON. M. MARGARET MCKEOWN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation