FILED

MAY 1 7 2011

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE M. MARGARET McKEOWN)

| | |
|---|---|
| **UNITED STATES OF AMERICA** | CASE NO. 10cr2418-MMM |
| v. | **ORDER** |
| **DONNY LOVE, SR.,** | REGARDING   PRETRIAL MOTIONS IN LIMINE |
| Defendant. | |

The government alleges that Donny Love, Sr. orchestrated the May 4, 2008 bombing of the federal courthouse in San Diego and carried out that bombing with the help of three co-conspirators—Rachelle Carlock, Ella Louise Sanders, and Eric Robinson. Carlock, Sanders, and Robinson have each pled guilty to crimes related to the bombing. A trial on the charges against Love is scheduled to begin on May 23, 2011. The parties filed a number of pre-trial motions in limine, and the court held a hearing to consider those motions on May 10, 2011. Having considered the briefing and arguments of counsel, the court now addresses the parties' motions, except Love's motion to exclude fingerprint evidence, which will be addressed in a separate order.

**I.    Financial Status**

The government moves to admit two categories of evidence regarding Love's financial

status during the first half of 2008.  The first category relates to Love's mortgage.  The government's proposed evidence includes mortgage records from JP Morgan Chase Bank, a notice of default served on Love in January 2008, the facts that Love stopped paying his mortgage in July 2007 and that he was over $26,000 in arrears on his mortgage at the time of the bombing, and Love's statement to a deputy district attorney that he would lose his home if his mortgage was not current by May 11, 2008.  The second category involves evidence related to Love's employment.  Specifically, the government wishes to introduce testimony that Love was on unauthorized leave from his job between January 11, 2008 and June 30, 2008, that Love received no wages during that time period, and that at the time of the bombing, Love was about to be fired either for absenteeism or for defrauding his employer.

The government's theory of the case is that Love created and led the scheme to bomb the federal courthouse in San Diego in order to report his co-conspirators to the Federal Bureau of Investigation ("FBI") and receive a financial reward.  The government argues that the evidence concerning Love's mortgage and employment shows that Love needed money and thus had a financial motive to lead the alleged conspiracy.  The Ninth Circuit has made clear that because "a rich man's greed is as much a motive to steal as a poor man's poverty," evidence that a defendant faced financial difficulties, although relevant to motive, generally has extremely limited probative value and "is likely to [entail] a great deal of unfair prejudice."  United States v. Mitchell, 172 F.3d 1104, 1109 (9th Cir. 1999).  As a result, evidence of poverty must be excluded under Federal Rule of Evidence 403 if the evidence does "not show 'more than the mere fact that the defendant is poor.'"  Id. (quoting United States v. Jackson, 882 F.2d 1444, 1449 (9th Cir. 1989)); see also Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

However, the Ninth Circuit has acknowledged that evidence of financial difficulties is admissible if the evidence shows more than poverty.  See, e.g., Jackson, 882 F.2d at 1449.

10cr2418-MMM

1  Specifically, evidence of financial circumstances is admissible if it demonstrates "[a]n
2  unexplained abrupt change in circumstances." Mitchell, 172 F.3d at 1109 (discussing
3  Jackson, 882 F.2d at 1449-50). Evidence of financial straits is also admissible if it shows
4  "that the defendant is living beyond his means," United States v. Feldman, 788 F.2d 544, 557
5  (9th Cir. 1986) (internal quotation marks omitted), and that the defendant had "a specific and
6  immediate financial need," United States v. Bensimon, 172 F.3d 1121, 1129 (9th Cir. 1999);
7  accord, e.g., Mitchell, 172 F.3d at 1109 (stating that evidence is admissible if it shows the
8  defendant "was squeezed, not just poor").

9      A.      **Mortgage Evidence**

10         The evidence and statements related to Love's mortgage default satisfy the
11  requirements laid out by the Ninth Circuit and Rule 403 of the Federal Rules of Evidence.
12  The evidence illustrates that Love was, in fact, "living beyond his means." Feldman, 788 F.2d
13  at 557. Both the notice of default and Love's statement that he would lose his house on May
14  11, 2008 demonstrate that Love also had "a specific and immediate financial need" to save his
15  home. Bensimon, 172 F.3d at 1129. The timing of this evidence is important as it is within
16  a proximate period surrounding the planning for the bombing and is also a sudden, and very
17  tangible, change in circumstances. Finally, the amount of Love's arrears shows the magnitude
18  of that imminent need. See Mitchell, 172 F.3d at 1110 (noting that a larger debt "cuts against"
19  excluding evidence of a financial need). Because this evidence collectively shows that Love
20  would suffer severe consequences if he did not receive an immediate influx of cash in May
21  2008, it does more than illustrate poverty.

22         Accordingly, based on the representation that the default notice was sent in January
23  2008, the court grants the government's motion to admit the evidence concerning Love's
24  mortgage beginning in January 2008 and denies the motion to the extent the government seeks
25  to introduce evidence prior to that time. The government may nevertheless use this evidence
26  only to argue that Love orchestrated the courthouse bombing in order to collect a reward with
27  which he could save his home, not to argue that Love wanted the reward generally, needed
28  money generally, or committed crimes because he is poor. The court will give the jury a

1 limiting instruction to the same effect. In sum, balancing possible prejudice to Love as well

2 as the other factors present here, the court concludes that the probative value of this evidence

3 is not "substantially outweighed by the danger of unfair prejudice, [or] confusion of the

4 issues," nor would it mislead the jury.

5      **B.    Employment Evidence**

6      The evidence regarding Love's employment presents a very different picture. A lack

7 of wages does not itself show an immediate, specific need for funds. Nor, in this case, does

8 Love's lack of wages demonstrate "an unexplained abrupt change in circumstances."

9 Mitchell, 172 F.3d at 1109. Love stopped receiving paychecks in January 2008, some months

10 before the bombing of the federal courthouse, but unlike the definitive default notice vis-à-vis

11 the mortgage, effects from the absence of a paycheck are cumulative over time, not abrupt.

12 Any change in Love's circumstances was also relatively marginal: Insofar as Love began to

13 default on his mortgage payments six months before he stopped working, his loss of wages

14 represents nothing more than the further decline of already tenuous financial circumstances.

15 In short, that Love had not received wages since January 2008 demonstrates little more than

16 that he was in a state of chronic financial need after that point. See id. (holding that it was

17 erroneous to admit evidence showing only that the defendant "was chronically overdrawn");

18 United States v. Alvarado, 209 F. App'x 685, 687 (9th Cir. 2006) (unpublished) (concluding

19 that a district court abused its discretion by admitting, inter alia, evidence of the defendant's

20 "employment status" that was used to show a poverty-based motive). It also bears noting that

21 simply because Love was not receiving wages at his then-current job says nothing about

22 whether he was employable and might obtain a different job.

23      The possibility that Love might lose his job also does not fit either of the categories

24 of admissible poverty evidence. Because Love had not drawn a salary since January 2008,

25 the impending loss of his job, far from creating an "abrupt change in circumstances," would

26 not change Love's short-term financial circumstances at all. The government has presented

27 no evidence that the loss of Love's job would create a desperate and immediate need for funds

28 separate from the preexisting need to save his house. In many cases, the impending loss of

1  a job might do more than show mere poverty; in this case, because of Love's circumstances
2  in 2008, it does not.

3        In contrast, the potential prejudice from the evidence concerning Love's employment
4  is acute.  Evidence that Love simply stopped going to his job—and was about to be fired for
5  that reason—would invite the jury to see him as both "feckless and poor."  Mitchell, 172 F.3d
6  at 1110.  Any suggestion that Love was going to be fired for fraud is even more prejudicial,
7  as it would paint him as a criminal.  For these reasons, the court concludes that the danger of
8  unfair prejudice outweighs the very limited probative value of the government's proffered
9  evidence concerning Love's employment.  See Fed. R. Evid. 403.  The government's motion
10 to admit the employment evidence is denied.

11 **II.  Prior Bad Acts**

12       Under Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts
13 is not admissible to prove the character of a person in order to show action in conformity
14 therewith."  By its terms, Rule 404(b) "limits the admissibility of evidence of prior acts to
15 those which serve as proof of motive, opportunity, intent, preparation, plan, knowledge,
16 identity, or absence of mistake or accident."  United States v. Rendon-Duarte, 490 F.3d 1142,
17 1144 (9th Cir. 2007) (internal quotation marks omitted).  Nevertheless, "Rule 404(b) is a rule
18 of inclusion.  Unless the evidence of other crimes tends only to prove propensity, it is
19 admissible."  United States v. Rrapi, 175 F.3d 742, 748 (9th Cir. 1999) (internal citation and
20 quotation marks omitted).  Evidence of prior bad acts may be admitted "if it (1) tends to prove
21 a material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and, (4)
22 in some cases, is similar to the offense charged."  United States v. Lozano, 623 F.3d 1055,
23 1059 (9th Cir. 2010) (internal quotation marks omitted).

24       Evidence of prior bad acts may be "admitted without regard to Rule 404(b)" if it is
25 "'inextricably intertwined' with a charged offense."  United States v. DeGeorge, 380 F.3d
26 1203, 1220 (9th Cir. 2004).  The Ninth Circuit has held that two types of evidence qualify as
27 inextricably intertwined.  See id.  "First, evidence of prior acts may be admitted if the
28 evidence 'constitutes a part of the transaction that serves as the basis for the criminal charge.'"

1 Id. (quoting United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995)).

2 "Second, prior act evidence may be admitted 'when it [is] necessary to do so in order to permit

3 the prosecutor to offer a coherent and comprehensible story regarding the commission of the

4 crime.'" Id. (quoting Vizcarra-Martinez, 66 F.3d at 1012-13).

5      "Even if the proffered evidence satisfies these requirements of Rule 404(b)," it is

6 inadmissible "under Rule 403 if its probative value is substantially outweighed by the danger

7 of unfair prejudice." Lozano, 623 F.3d at 1060 (internal quotation marks and alterations

8 omitted). The same is true of evidence that is inextricably intertwined with a charged offense.

9 See DeGeorge, 380 F.3d at 1220 (considering whether evidence necessary for the prosecution

10 to offer a coherent and comprehensible story satisfied Rule 403).

11      The government moves to admit evidence of three types of prior bad acts.

12 Specifically, the government seeks to admit evidence concerning Love's prior state

13 convictions, evidence of past violent acts by Love, and testimony that Love directed Carlock,

14 Sanders, and Robinson to commit prior crimes, in some cases in exchange for narcotics. The

15 court considers each type of evidence in turn.

16     **A.   Prior Convictions**

17      In 2008, Love pled guilty in two California state criminal cases. According to the

18 government, one case involved "felony drug charges for the transportation of cocaine and

19 possession of cocaine for sale." Gov't Mot. at 18. The second case involved both a firearms

20 offense and a fraud charge related to a forged-check scheme.[1] See id. at 18-19. Although the

21 government's moving papers ask the court to admit the fact that Love has prior convictions,

22 Love's resulting sentence, and the details of each charge, the government narrowed this

23 request at the May 10 hearing. The government continues to seek admission of the fact that

24 Love has two state convictions that left him facing an imminent term of imprisonment, but it

25 now asks to admit the substance and details only of the fraud conviction, not the drug or

---

27    [1] At the May 10 hearing, the government referred to the conviction as one for

28 fraud, but its written motion describes the same conviction as one for forgery. The
court's conclusions in no way depend on whether Love pled guilty to fraud or forgery.

10cr2418-MMM

1  firearm crimes.

2  The government argues that this evidence is admissible both under Rule 404(b) and

3  because it is inextricably intertwined with the charged offenses.  Its theory of admissibility is

4  again tied to motive: Love, the government argues, wanted money to support his children

5  while he was in prison for the state crimes as well as to save his house.[2]  The government also

6  plans to present evidence that, shortly after the courthouse bombing, Love asked the FBI for

7  not only a monetary reward but also a break on his state charges in exchange for information

8  concerning the bombing.

9  ### 1.   Fact of Prior Convictions

10  The court concludes that the fact that Love had state convictions that resulted in

11  imprisonment shortly after the bombing satisfies the test for admissibility under Rule 404(b).

12  As noted above, the first element of that test requires that the evidence of bad acts must "tend

13  to prove a material point."  Lozano, 623 F.3d at 1059.   The government concedes that

14  although it seeks to introduce the fact of Love's convictions to show motive, "motive is not

15  an element of the charged offenses" in this case.  Gov't Mot. at 22.  Love's convictions

16  therefore may be "allowed to show motive only [if] motive is in turn relevant to establish an

17  element of the offense that is a material issue."  United States v. Brown, 880 F.2d 1012, 1014

18  (9th Cir. 1998).

19  This condition is satisfied.  The charges against Love include a conspiracy count under

20  18 U.S.C. § 371.  To prove that count, the government must show, among other things, that

21  Love was part of an explicit or implicit "agreement to engage in criminal activity," United

22  States v. Sullivan, 522 F.3d 967, 976 (9th Cir. 2008) (internal quotation marks omitted), and

23  that he possessed "[k]nowledge of the objective of the conspiracy," United States v. Moreland,

24  622 F.3d 1147, 1169 (9th Cir. 2010) (internal quotation marks omitted).  Love's imminent

25  need for money and his desire for a break on his state charges make it at least "more probable"

26  

27  [2] At the May 10 hearing in this matter, the government represented that it would

28  not attempt to introduce evidence that the mother of Love's children was incarcerated
   in 2008.

1 that he participated in the alleged conspiracy—and thus knew about, or even conceived of, the

2 objective of the conspiracy—in order to achieve those reward-based goals. <u>See</u> Fed. R. Evid.

3 401. These elements of the conspiracy charge, meanwhile, are "material issues in this case

4 simply because the government ha[s] to prove them." <u>United States v. Mayans</u>, 17 F.3d 1174,

5 1182 (9th Cir. 1994); <u>accord, e.g.</u>, <u>United States v. Flores-Blanco</u>, 623 F.3d 912, 919 n.4 (9th

6 Cir. 2010).

7       The second prong of the 404(b) analysis, which concerns timing, is satisfied because

8 Love entered guilty pleas to the state charges in 2008, only months before the commission of

9 the crimes charged in this case. <u>See, e.g.</u>, <u>United States v. Vo</u>, 413 F.3d 1010, 1018-19 (9th

10 Cir. 2005) (citing cases that affirmed the admission of evidence showing acts that occurred

11 eight to thirteen years in the past). Because Love does not contest that he pled guilty to the

12 state charges, the third prong of the 404(b) analysis is similarly satisfied. <u>See</u> <u>United States</u>

13 <u>v. Spillone</u>, 879 F.2d 514, 518-19 (9th Cir. 1989).

14       The final issue under Rule 404(b) is whether Love's prior convictions must be for acts

15 similar to the offenses charged in this case. The Ninth Circuit has occasionally suggested that

16 prior convictions are admissible *only* if the convictions are for acts "similar to the charged

17 conduct." <u>See</u> <u>United States v. Howell</u>, 231 F.3d 615, 628 (9th Cir. 2000). In other cases,

18 however, the court of appeals has clarified that "[t]he degree of similarity required will depend

19 on the evidential hypothesis which is being employed" to admit the prior conviction. <u>United</u>

20 <u>States v. Arambula-Ruiz</u>, 987 F.2d 599, 603 (9th Cir. 1993) (internal quotation marks and

21 alteration omitted). More specifically, the Ninth Circuit has held that prior convictions may

22 be used to show motive if "there [is] a sufficient factual relationship between the two incidents

23 to render to prior conviction relevant." <u>United States v. Bowman</u>, 720 F.2d 1103, 1105 (9th

24 Cir. 1983).[3] That Love's prior convictions are not for crimes similar to those charged in this

25 ————————————

26      [3] In Bowman, both the prior conviction and the crime charged happened to be

for assault, but the court did not rely on that fact. <u>See</u> 720 F.2d at 1105; <u>see also, e.g.</u>,

27 <u>People of Territory of Guam v. Turner</u>, 33 F.3d 59 (table), 1994 WL 444629, at *1

(9th Cir. Aug. 17, 1994) (unpublished) (admitting evidence of a prior robbery to show

28 a motive for murder).

1 | case is therefore not dispositive.[4]

2 |     Instead, the government only needs to show the "sufficient factual relationship"
3 | required by <u>Bowman</u>—or, put another way, that "[t]he prior wrongful acts . . . establish a
4 | motive to commit the crime charged," <u>Brown</u>, 880 F.2d at 1014. Here, Love's convictions
5 | and the resulting sentence of imprisonment establish a motive for seeking both a monetary
6 | reward—to save Love's house and to provide for his children while he was in prison—and a
7 | reward in the form of dismissed or reduced state charges. The fact of Love's convictions and
8 | resulting prison term therefore does much more than show propensity and is admissible under
9 | Rule 404(b). The court also finds that the fact and timing of the convictions and the resulting
10 | prison terms are inextricably intertwined with the charged offenses. In particular, these
11 | convictions are the underpinning for the government's theory that one of the elements of
12 | Love's scheme was to seek a break with respect to his state charges. This evidence is part and
13 | parcel of, and necessary to, the government's effort to present a coherent and comprehensible
14 | story.

15 |     The same evidence also satisfies Rule 403. Love's prior convictions are relatively
16 | central to the government's theory of motive; those convictions provide the only basis for the
17 | government's claim that Love wanted to receive reduced state charges and a substantial
18 | portion of its claim that Love sought a financial reward. The evidence at issue is therefore
19 | highly probative. At the May 10 hearing, counsel for Love conceded that the risk of prejudice
20 | from the fact of Love's past convictions would be less severe than the risk of prejudice from

21 |
22 |
23 | ——————————————
24 |    [4] Love's convictions are ultimately connected through motive to knowledge and
25 | intent, and similarity is required when evidence is introduced to show those states of mind. <u>See, e.g.</u>, <u>Vo</u>, 413 F.3d at 1018 (stating in the context of a prior conviction that
26 | similarity is required only if "knowledge and intent are at issue"). This rule does not,
27 | however, extend to situations in which the evidence goes primarily to motive and has only a second-order relationship to intent. <u>See</u> <u>Turner</u>, 1994 WL 444629, at *1
28 | (admitting evidence of motive when motive was relevant to premeditation despite the lack of similarity between the crimes).

1 │ the substance and details of those convictions.[5]  The court agrees and concludes that the risk

2 │ of prejudice does not substantially outweigh the significant probative value of the fact that

3 │ Love received a prison term after pleading guilty to state crimes.  To further reduce the risk

4 │ of prejudice, the court will issue an appropriate limiting instruction to the jury.  See Flores-

5 │ Blanco, 623 F.3d at 920 (noting that a limiting instruction can "minimize[]" the risk of

6 │ prejudice).  The court emphasizes that the government may not be use Love's past convictions

7 │ to argue that Love has a propensity to commit crimes.

8 │ **2.    Substance of the Fraud Conviction**

9 │     The government contends that the substance of Love's fraud conviction is inextricably

10 │ intertwined with this case because the prosecution cannot "present a coherent and

11 │ comprehensive picture of why [Love] orchestrated the bombing of the federal courthouse"

12 │ without the prior evidence of his fraud.  Mot. at 22.  That argument is unpersuasive.  To

13 │ explain its view that Love had financial and sentencing-based motives for his alleged role in

14 │ the conspiracy, the government needs at most the fact of Love's convictions; the relevant

15 │ point is that Love was going to state prison, not *why* he was going there.  The substance of

16 │ Love's conviction is thus in no way "necessary" for the government to tell a coherent story

17 │ about the crimes charged.  See DeGeorge, 380 F.3d at 1220.

18 │     For similar reasons, the substance of the fraud charge does not satisfy Rule 404(b).

19 │ The nature of Love's conviction, once separated from the fact of his conviction, adds nothing

20 │ to the government's theory of motive, and the government does not argue that Love's prior

21 │ convictions are admissible for any reason except to show motive.  The government has thus

22 │ demonstrated neither that the substance of the fraud charge "tends to prove a material point"

23 │

24 │ ────────────────

25 │     [5] Love does not argue that allowing the government to use his past convictions
   │ to show motive would impermissibly allow the presentation of evidence of mere
26 │ poverty.  The court would reject any such argument.  Love knew that he was going to
   │ state prison.  Love therefore knew he would be unable to provide for his children, and
27 │ he faced an imminent need to receive cash for that purpose.  The fact of Love's
28 │ conviction and attendant prison sentence therefore qualifies for admission under
   │ Feldman, Bensimon, and Mitchell.

at issue in the case, <u>Lozano</u>, 623 F.3d at 1059, nor that the nature of Love's conviction "establish[es] a motive to commit the crime charged," <u>Brown</u>, 880 F.2d at 1014.   The substance of the fraud charge would instead suggest only that Love has a propensity to commit crimes for financial gain and therefore is inadmissible under Rule 404(b).

The substance of the fraud charge is also excludable under Rule 403.  The probative value of this evidence, which adds nothing to the government's theory of motive, is minimal or non-existent.  In contrast, the risk of prejudice is great, because the jury would be presented with evidence that Love committed a different and prior crime for financial gain—and thus would be invited to believe that Love has a propensity to commit such crimes.  That risk substantially outweighs any probative value the substance of the fraud conviction might have. The substance, name and nature of Love's fraud conviction will therefore be excluded at trial. <u>See</u> <u>United States v. Hinkson</u>, 585 F.3d 1247, 1265-66 (9th Cir. 2009) (approving the exclusion under Rule 403 of evidence that did not speak directly to an issue in the case and posed a "danger of confusion of the issues, misleading the jury, undue delay, and waste of time"); <u>see also</u> <u>Old Chief v. United States</u>, 519 U.S. 172, 185 (1997) ("[E]vidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant.").

## B.   Violent Acts

The second category of prior act evidence includes episodes in which Love acted violently.  The motion papers discuss a number of specific incidents of violence.  At the May 10 hearing, however, the government cabined its request and stated that it wishes to introduce only two types of evidence related to violence: testimony by Carlock that she feared Love because he physically abused her and evidence concerning an incident in which Love beat a third party while Carlock pointed a gun at the victim.  Again, the government argues that this evidence is both inextricably intertwined with the charged crimes and admissible under Rule 404(b).

### 1.   Abuse of Carlock

The fact that Love physically abused Carlock is deeply connected with the

1 | government's theory of the case. Carlock played a major role in the alleged bombing
2 | conspiracy—among other things, she placed the bombs at the federal courthouse. The
3 | government alleges that she performed these actions simply because Love told her to do so.
4 | It believes that Carlock obeyed Love's directions for two interrelated reasons—Carlock loved
5 | Love but also feared that Love would physically abuse her, as he previously had, if she did
6 | not carry out the bombing. The fact that Love abused Carlock is a keystone without which
7 | neither her participation as a central figure in the bombing nor her relationship with Love can
8 | be adequately explained. Absent evidence of that underlying motivation, the government
9 | cannot tell a "coherent and comprehensible story" about the conspiracy or the roles of Carlock
10 | and Love in the bombing. See DeGeorge, 380 F.3d at 1220. The fact of Love's abuse is
11 | therefore inextricably intertwined with the charged crimes.

12 |         The Ninth Circuit's opinion in United States v. Beckman, 298 F.3d 788, 794 (9th Cir.
13 | 2002), supports this conclusion. The defendant in Beckman was detained at the border after
14 | a substantial amount of marijuana was discovered in the truck he was driving—one of three
15 | in a convoy of trucks falsely outfitted to look like a dune buggy operation. See id. at 791-92.
16 | The government introduced evidence that Beckman had also participated in a prior marijuana
17 | run with the same co-conspirators. On appeal, the Ninth Circuit affirmed the admission of this
18 | evidence because, among other things, it explained both Beckman's relationship with his co-
19 | conspirators and why Beckman was allowed to transport such a large amount of marijuana.
20 | See id. at 794. In the same way, Love's abuse of Carlock explains both the relationship
21 | between the two and Carlock's role in the conspiracy. Evidence that the abuse occurred is
22 | therefore admissible. See also United States v. Williams, 291 F.3d 1180, 1189 (9th Cir. 2002)
23 | (permitting the introduction of evidence of physical assaults as inextricably intertwined with
24 | the charged crimes), overruled on other grounds by United States v. Gonzales, 506 F.3d 940,
25 | 942 (9th Cir. 2007) (en banc).

26 |         The court also concludes that the probative value of this evidence is not substantially
27 | outweighed by the risk of prejudice, confusion of the issues, or misleading the jury. The court
28 | is mindful that evidence of abuse can carry with it extremely negative overtones vis-à-vis

10cr2418-MMM

1   Love.  Insofar as the evidence of physical abuse by Love explains Carlock's otherwise
2   apparently motiveless participation in the alleged conspiracy, that evidence is nonetheless
3   highly probative.  In addition, after weighing the factors in Federal Rule of Evidence 403, the
4   court intends to limit the nature of this evidence.  The introduction of only the bare fact of past
5   physical abuse, without any details about the nature, frequency, or severity of the assaults,
6   greatly ameliorates the risk of prejudice to Love.  In fact, defense counsel conceded at the
7   May 10 hearing that the fact of physical abuse may be admissible.  The court will therefore
8   allow Carlock to testify that she feared Love because he had physically abused her on more
9   than one occasion.  See United States v. Banks, 514 F.3d 959, 977 (9th Cir. 2008) (holding
10  that the district court properly admitted evidence of prior violence that was probative and that
11  included no "facts [that] would shock the average juror or otherwise render the jury incapable
12  of weighing the evidence in a disinterested manner").  The government is reminded that it may
13  not use this evidence to argue that Love has a propensity for violence, and the court will issue
14  an appropriate limiting instruction to the jury.

15              2.      **Assault on Third Party**

16          Unlike the fact that Love abused Carlock, the evidence that Love assaulted a third
17  party while Carlock pointed a gun at the victim is not necessary to enable the government to
18  tell a coherent and comprehensible story about the charged crimes.  The evidence is not
19  inextricably intertwined with the charges.  The government offers this prior incident as an
20  example of Carlock's willingness to act at Love's direction, but the government's submissions
21  to this court provide numerous other such examples.  The government argues, for instance,
22  that Carlock purchased gunpowder for the pipe bombs at Love's direction and that she
23  participated in several "test runs" with pipe bombs before the courthouse bombing.  The
24  government will therefore be able to amply illustrate both Carlock's participation in the
25  charged conspiracy and her willingness to act at Love's direction.  See DeGeorge, 380 F.3d
26  at 1220 (holding that evidence is only inextricably intertwined if it is "necessary" to tell a
27  coherent story about the charged crimes).

28          Even assuming that evidence of Love's assault on the third party were admissible

1  under Rule 404(b), the court excludes it under Rule 403.  Because the earlier incident has

2  nothing to do with the alleged bombing conspiracy, and because the government will present

3  large quantities of other evidence concerning Carlock's relationship with Love and her role

4  in the alleged conspiracy, the probative value of the incident of prior violence is extremely

5  limited.  See Old Chief, 519 U.S. at 184 ("[W]hat counts as the Rule 403 'probative value' of

6  an item of evidence . . . may be calculated by comparing evidentiary alternatives.").

7  Moreover, the lurid details of an episode in which Love viciously beat a man while directing

8  Carlock to point a gun at the victim would suggest that Love is unstable and violent.  Evidence

9  of that incident would therefore present a great risk of prejudice, and that risk substantially

10  outweighs the minimal probative value of this incident.  See id. at 180 ("'Unfair prejudice'

11  within its context means an undue tendency to suggest decision on an improper basis.").

12        **C.    Prior Crimes Involving Co-Conspirators**

13        The government moves to admit evidence of four types of prior crimes involving Love

14  and his co-conspirators.  Specifically, it seeks to present evidence that Sanders shoplifted

15  components used to construct the pipe bombs that exploded at the courthouse; evidence that

16  Sanders shoplifted other items to help provide for Love's children; evidence that Carlock

17  helped Love defraud his former employer by forging checks; and evidence that Love gave

18  Sanders and Robinson illegal drugs for their own use.  Love opposes the admission of all of

19  this evidence.

20        **1.    Shoplifting of Pipe Bomb Parts**

21        Sanders's act of shoplifting parts used to make the pipe bomb is inextricably

22  intertwined with the charged crimes, because that act "constitutes a part of the transaction that

23  serves as the basis for the criminal charge[s]."  DeGeorge, 380 F.3d at 1220 (internal

24  quotation marks omitted).  The superseding indictment charges Love with, *inter alia*,

25  damaging the federal courthouse in San Diego with a pipe bomb and conspiring to achieve

26  that end.  Procuring the parts for and building the pipe bomb are necessary steps in achieving

27  that substantive offense and alleged conspiratorial goal and therefore form part of the same

28  transaction as the bombing itself.  See, e.g., Williams, 291 F.3d at 1189 (holding that assaults

14                                                                    10cr2418-MMM

1  on unwilling victims were admissible as a necessary part of the transaction of transporting
2  those victims across state lines); <u>United States v. Serang</u>, 156 F.3d 910, 915 (9th Cir. 1998)
3  (affirming the admission in an arson case of evidence showing previous and less successful
4  attempts to burn down a restaurant).[6]

5             **2.    Other Shoplifting**

6             By contrast, any shoplifting performed by Sanders at Love's behest that does *not* relate
7  to the bombing is not inextricably intertwined with the crimes charged.  The government
8  asserts that this evidence is necessary to show Sanders's relationship with Love.  <u>See</u> Gov't
9  Mot. at 28.  However, insofar as this evidence shows Sanders's role as a thief for Love, it is
10 cumulative of the evidence that Sanders stole pipe bomb parts.  In addition, the government
11 plans to introduce evidence of Sanders's subordinate role in preparing for the bombing itself.
12 The jury will thus be presented with substantial evidence of Sanders's role in the alleged
13 conspiracy, and evidence of her commission of unrelated crimes is not "necessary . . . in order
14 to permit the prosecutor to offer a coherent and comprehensible story regarding the" crimes
15 at issue.  <u>DeGeorge</u>, 380 F.3d at 1220 (internal quotation marks omitted).

16            The court assumes without deciding that the evidence of miscellaneous shoplifting
17 would be admissible under Rule 404(b) to show a hierarchical relationship between Love and
18 Sanders and to illustrate that Sanders committed crimes on Love's behalf.  The evidence is
19 nevertheless inadmissible under Rule 403.  The probative value of the fact that Sanders
20 shoplifted for Love on other occasions is vanishingly small, both in light of the admissible
21 evidence that she shoplifted pipe bomb parts and because a non-violent crime like shoplifting
22 stands in stark contrast to the bombing scheme alleged in this case.  <u>See</u> <u>Old Chief</u>, 519 U.S.
23 at 184.  The alleged reason Love directed Sanders to shoplift, meanwhile, presents a serious
24 risk of prejudice.  The government argues that Sanders shoplifted for Love so that he could

---

26
27            [6] Love does not specifically argue that evidence of Sanders's theft of pipe bomb
   components is inadmissible under Rule 403.  Any such challenge would not succeed,
28 because the evidence is highly probative of the development and actions of the alleged
   conspiracy.

1  provide for his children.  Testimony to that effect would suggest that Love has previously
2  committed crimes to benefit his family and simply exhibited that same propensity in this case.
3  Such testimony could also paint Love more generally as an impoverished person who resorts
4  to crime to alleviate that poverty.  The court concludes that this risk of prejudice substantially
5  outweighs the minimal probative value of evidence that Sanders shoplifted items not related
6  to the crimes at issue.  See id. at 182 ("There is . . . no question that propensity would be an
7  'improper basis' for conviction.").  Accordingly, the government's motion to admit evidence
8  regarding miscellaneous shoplifting by Sanders is denied.

9         **3.**     **Check Fraud**

10        Evidence that Carlock assisted Love in defrauding his employer by forging checks is
11  not inextricably intertwined with the crimes charged.  Like Sanders's miscellaneous
12  shoplifting, the forgery scheme is entirely unrelated to the bombing.  Nor is Carlock's forgery
13  in any way necessary to tell the a coherent story about the bombing.  As discussed in Section
14  II.B.2 above, the government plans to present a good deal of evidence concerning Carlock's
15  motivations and her role in the alleged conspiracy; it can tell a "coherent and comprehensible
16  story" about Carlock's part in that conspiracy without introducing evidence of prior, unrelated
17  crimes.  See DeGeorge, 380 F.3d at 1220.

18        Like the evidence of Sanders's miscellaneous shoplifting, testimony concerning
19  Carlock's role in the check-fraud scheme is excludable under Rule 403, even if it is admissible
20  under Rule 404(b).  The issue here is slightly closer, because testimony concerning the check
21  fraud scheme is not entirely cumulative with evidence concerning the bombing conspiracy.
22  Evidence about Carlock's actions therefore might marginally enhance the jury's understanding
23  of her relationship with Love.  At the same time, the government's evidence of "test run"
24  bombings—as well as any evidence it introduces about Carlock's purchase of gunpowder for
25  pipe bombs—will provide the jury with a good deal of evidence concerning that relationship.
26  In addition, the jury will have evidence of the romantic relationship between Carlock and
27  Love, along with evidence as to the love-fear nature of the relationship.  Check fraud, like
28  shoplifting, is also a much less serious and violent crime than those charged in this case.  The

probative value of any testimony concerning the check-fraud scheme is thus minimal.  See
Old Chief, 519 U.S. at 184-85.  Looking to Federal Rule of Evidence 403, the court concludes
that the risk of prejudice is again high with respect to the check-fraud scheme.  The check-
fraud evidence would invite the jury to see Love as guilty of the bombing because he has a
propensity to commit crimes for financial gain.  Admitting the check-fraud evidence would
also let the otherwise-inadmissible substance of one of Love's state convictions in through the
evidentiary back door.  Finally, if the government were to carry through on its apparent
intention to elicit still further testimony about the check-fraud scheme, there would be some
danger of misleading the jury as to what crimes are at issue.  For these reasons, the court
concludes that the risk of prejudice and confusion from presenting this evidence outweighs
its potential probative value, and the evidence will be excluded under Rule 403.

### 4.    Provision of Narcotics

Evidence that Love gave drugs to Sanders and Robinson after they performed crimes
at his direction is potentially analogous to Love's physical abuse of Carlock.  The government
argues that, just as Carlock was motivated to bomb the courthouse in large part by fear of
Love, Sanders and Robinson were motivated to commit crimes at Love's behest in order to
obtain a regular supply of narcotics.  However, the analogy as presented by the government
is not a perfect one.  The government argues that Carlock *participated in the alleged bombing
conspiracy* because of Love's threats of violence.  By contrast, it only contends that the fact
that Love supplied Sanders and Robinson with drugs generally illustrates their relationship
with Love; the government has not specifically stated its intention to present evidence that
Sanders and Robinson participated in the alleged conspiracy in order to obtain a continuing
supply of narcotics or that the drug supply is related to the conspiracy.  This distinction is
crucial.  Evidence is only inextricably intertwined if "it [is] necessary . . . in order to permit
the prosecutor to offer a coherent and comprehensible story *regarding the commission of the
crime*." Vizcarra-Martinez, 66 F.3d at 1012-13 (emphasis supplied).  Accordingly, at this time
the court concludes that Love's provision of narcotics to Sanders and Robinson is not
inextricably intertwined with the crimes at issue.

10cr2418-MMM

1      The government's contention that this evidence is admissible under Rule 404(b) is
2 based exclusively on United States v. McKoy, 771 F.2d 1207 (9th Cir. 1985).  McKoy
3 concerned the sale and transportation of stolen merchandise.  The Ninth Circuit approved the
4 admission of evidence concerning prior transactions in stolen goods between the same co-
5 conspirators who participated in the crime at issue "to show the background and development
6 of the conspiracy."  Id. at 1214.  In reaching that conclusion, the court expressly found that
7 "McKoy's prior conduct was similar enough to demonstrate that the relationship between [the
8 co-conspirator] and McKoy was that of seller and buyer of stolen property."  Id. at 1215.

9      McKoy thus imposes a somewhat relaxed similarity requirement that must
10 nevertheless be satisfied before evidence can be admitted under Rule 404(b) to show the
11 relationship between co-conspirators.  This requirement is not satisfied by the evidence that
12 Love supplied narcotics to Sanders and Robinson.  In McKoy, the prior act showed the co-
13 conspirators as the buyer and seller of stolen goods—a relationship they allegedly repeated
14 in the transaction at issue in that case.  Here, by contrast, the government alleges that Love
15 previously served as a narcotics supplier to Sanders and Robinson.  That relationship differs
16 markedly from the mastermind-subordinate relationship the government argues Love had with
17 Sanders and Robinson as part of the bombing conspiracy.  Moreover, the government has not
18 suggested that Love's supply of narcotics to Sanders and Robinson is connected to the
19 conspiracy at issue.  In short, because the evidence that Love gave drugs to Sanders and
20 Robinson does not illustrate their roles in the alleged conspiracy, McKoy does not provide a
21 basis for admitting evidence of that supplier-user relationship.  See United States v. Hill, 953
22 F.2d 452, 457 (9th Cir. 1991) (expressly distinguishing McKoy and holding that it was error
23 to admit evidence that Hill and an alleged narcotics co-conspirator had previously used illegal
24 drugs together, because that fact "was not evidence of the beginning of the conspiracy charged
25 or of plan and association").

26      The court also excludes the government's proffered evidence that Love supplied
27 Sanders and Robinson with narcotics under Rule 403.  As currently presented, the evidence
28 illustrates habitual drug dealing that is no more connected to the alleged bombing conspiracy

1  than is Love's prior state narcotics conviction. The evidence is therefore of only marginal

2  relevance to the crimes charged. It also carries a high risk of prejudice. The jury could see

3  Love as both criminal and prone to manipulation—and thus conclude that he committed the

4  crimes charged in conformity with those character traits. The jury could similarly be either

5  confused or misled by testimony concerning narcotics transactions that are unconnected with

6  the alleged conspiracy. As a result, the court concludes that the risk of unfair prejudice from

7  evidence that Love supplied Sanders and Robinson with narcotics, as that evidence has been

8  presented by the government, outweighs any probative value the evidence may have. The

9  government's motion to admit testimony that Love supplied Sanders and Robinson with

10  narcotics is denied without prejudice.[7]

11  **III.     Expert Witnesses**

12      The government states that it "intends to introduce expert witness testimony regarding

13  the examination of numerous pieces of evidence." Gov't Mot. at 29. At this time, Love

14  objects only to the testimony of Robin Ruth, the government's latent fingerprint expert. Love

15  moves to exclude that evidence as insufficiently reliable under Daubert v. Merrell Dow

16  Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137

17  (1999). The court orally denied Love's motion following a Daubert hearing held on May 16,

18  2011 and will elaborate on that ruling in a separate order.

19

20

---

21      [7] Love requests a pre-trial evidentiary hearing to assess the reliability of any

22  testimony given by Carlock, Sanders, or Robinson regarding Love's alleged prior acts.
   However, Love does not cite, and the court has not found, any authority requiring a

23  hearing. A hearing would also be of little value under the circumstances. Evidence

24  that is inextricably intertwined with the crime may be admitted without regard to the
   requirements of Rule 404(b), such as the requirement that there be sufficient evidence

25  of the prior act. See DeGeorge, 380 F.3d at 1220. The fact of Love's prior conviction

26  and prison sentence is the only evidence of prior acts that the court has admitted under
   Rule 404(b)—and Love does not dispute the existence of those convictions. In any

27  event, the Ninth Circuit has held that the uncorroborated testimony of a co-conspirator

28  provides sufficient proof for evidence to be admissible under Rule 404(b). See United
   States v. Ramirez-Robles, 386 F.3d 1234, 1245 (9th Cir. 2004).

## IV.     Summary Evidence

At trial, the government plans to introduce two summary charts showing the number of telephone calls made by Love and Carlock to their alleged co-conspirators.  Love seeks to exclude these charts.  Summary evidence is admissible if "(1) the underlying materials on which the summary exhibit is based are admissible in evidence, and (2) those underlying materials were made available to the opposing party for inspection."  Amarel v. Connell, 102 F.3d 1494, 1516 (9th Cir. 1996).

The parties do not dispute that the telephone toll records underlying the government's charts will be admissible as an exception to the hearsay rule under Federal Rule of Evidence 803(6) if the government presents a qualified witness who certifies the records pursuant to Federal Rule of Evidence 902(11).  The parties also do not dispute that the government has provided Love with both the underlying toll records and the summary charts themselves. This disclosure will provide Love with "an opportunity to verify the reliability and accuracy of the summary prior to trial." Amarel, 102 F.3d at 1516 (internal quotation marks omitted).  Love's motion to exclude the summary charts is therefore denied without prejudice.

## V.      Business and Public Records

The government states that it may seek to introduce various business and public records into evidence at trial.  At this time, Love does not challenge the admissibility of any such records under Federal Rules of Evidence 803 and 902.

## VI.     Exclusion of Witnesses

The government's motion with respect to exclusion of witnesses is granted.  During trial, the court will exclude all witnesses except those not subject to exclusion under Federal Rule of Evidence 615.

## VII.    Attorney Voir Dire

Love seeks to allow his counsel the opportunity to ask questions during voir dire. Notwithstanding the untimeliness of this motion under Local Rule 47.1(b)(1), the court grants the motion.  The court will conduct the voir dire.  In addition, counsel will be provided with a reasonable time, not to exceed half an hour per side, to ask questions of potential jurors.

## VIII.   Discovery Motions

The motion to compel discovery filed by Love on August 2, 2010 remains pending before the court, and the government has filed a motion for reciprocal discovery from Love. Because discovery in this matter remains in process and is not yet complete, both motions will remain pending.  To the extent presently available and required, Love has agreed, and the court has ordered, that Love will provide reciprocal discovery to the government.

For these reasons, **IT IS ORDERED** as follows:

(1)   The government's motion to admit evidence of Love's financial situation is **GRANTED IN PART AND DENIED IN PART**.  The court will admit the government's proposed evidence concerning Love's mortgage (for the period following January 2008) but excludes the government's proposed evidence concerning Love's employment;

(2)   The government's motion to admit evidence of prior bad acts is **GRANTED IN PART AND DENIED IN PART**.  The court will admit the facts that Love has prior state convictions and was facing a specified prison term for those convictions at the time of the bombing, the fact that Rachelle Carlock was afraid of Love because he had physically abused her, and evidence concerning Ella Louise Sanders's shoplifting of components used to make the pipe bomb that exploded at the federal courthouse in San Diego on May 4, 2008.  The court excludes evidence of the substance, name and nature of Love's fraud conviction, evidence concerning the incident in which Love beat a third party while Carlock pointed a gun at the victim, evidence of shoplifting by Sanders that was unrelated to the crimes charged, and evidence of Carlock's involvement in Love's check-fraud scheme.  Finally, the court denies without prejudice the government's motion to admit evidence that Love provided Sanders and Robinson with narcotics;

(3) Love's motion to exclude the government's summary charts is **DENIED** without prejudice;

(4) The government's motion to exclude witnesses is **GRANTED**, and the court will exclude all witnesses during trial except those not subject to exclusion under Federal Rule of

10cr2418-MMM

1  Evidence 615;

2       (5) Love's motion for attorney voir dire is **GRANTED**, and the court will provide

3  counsel with a reasonable time, not to exceed thirty minutes per side, to ask questions of

4  potential jurors; and

5       (6) Love's motion to compel discovery and the government's motion for reciprocal

6  discovery will remain pending at this time.

7

8

9  Dated: May 17, 2011

                       M. Margaret McKeown

10                       HON. M. MARGARET MCKEOWN
UNITED STATES CIRCUIT JUDGE

11                       Sitting by Designation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10cr2418-MMM