UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE M. MARGARET McKEOWN)**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | CASE NO. 10cr2418-MMM |
| ) | |
| ) | **ORDER DENYING** |
| **v.** ) | **DEFENDANT LOVE'S** |
| ) | **MOTION** |
| **DONNY LOVE, SR.,** ) | **FOR A NEW TRIAL** |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

Eighteen months after a jury convicted him of 10 counts related to the bombing of a federal courthouse, Defendant Donny Love ("Love") moved for a new trial, for the second time. The bulk of Love's claims are untimely under Federal Rule of Criminal Procedure 33 ("Rule 33") because they do not arise out of newly discovered evidence. Love's claims that are based on newly discovered evidence fail because Love has failed to show a new trial would probably result in acquittal. Accordingly, the motion is denied. This Order follows the court's denial of the motion at the hearing on February 15, 2013.

1

1

**BACKGROUND**

2    In the early morning hours of May 4, 2008, an improvised device consisting

3  of three pipe-bombs, two pounds of explosive powder, and 100 nails exploded in

4  front of the Edward J. Schwartz Federal Courthouse in downtown San Diego,

5  California.  The device propelled flying shrapnel and bomb material into the

6  surrounding area, and the explosion caused significant damage to the building.

7  The government's investigation of the bombing initially focused on Rachelle

8  Carlock ("Carlock"), Ella Louise Sanders ("Sanders"), and Eric Robinson

9  ("Robinson").  Carlock, Sanders, and Robinson later admitted to participating in

10  the bombing and alerted the government to Love's role in orchestrating it as part of

11  an elaborate scheme to receive a monetary reward and lenient treatment in pending

12  state criminal cases in exchange for supplying the government with information on

13  the bombing.

14    On December 9, 2010, the grand jury returned a 10-count superseding

15  indictment charging Love with violating federal laws relating to the use of

16  explosives and firearms, the destruction of property, witness tampering, and

17  obstruction of justice.[1]  (Dkt. No. 40.)  Trial lasted 10 days.  The government

---

[1] The superseding indictment charged Love with one count each of conspiracy to use a weapon of mass destruction in violation of 18 U.S.C. §§ 2332a(a)(2)(B) and (a)(3); use of a weapon of mass destruction in violation of 18

2

1    presented extensive evidence of Love's leadership of the plot, including multiple

2    witnesses who testified to Love's masterminding of the bombing.  Defense counsel

3    vigorously represented Love, attempted to impeach the government witnesses,

4    argued that Carlock, Sanders, and Robinson had acted independently in executing

5    the explosion, and introduced evidence that suggested Love could not have

6    participated because he was recovering from a recent thumb surgery.  On June 6,

7    2011, a jury convicted Love of all 10 counts in the superseding indictment.  (Dkt.

8    No. 114.)

9         Following trial, in August 2011, Love moved to replace his trial counsel,

10   Robert Boyce ("Boyce"), and, in October 2011, moved for a new trial on the basis

11   of ineffective assistance of counsel.  (Dkt. Nos. 127, 146.)  The court granted

12   Love's motion for new counsel and appointed Michael Berg ("Berg") as Love's

---

U.S.C. §§ 2332(a)(2)(B), (a)(3), and 2; conspiracy to maliciously damage buildings
or real property by means of an explosive and to manufacture and possess
unregistered firearms in violation of 18 U.S.C. § 371; malicious damage to
buildings or real property by means of an explosive and aiding and abetting in
violation of 18 U.S.C. §§ 844(f)(1) and 2; possession of a destructive device in
relation to a crime of violence and aiding and abetting in violation of 18 U.S.C.
§§ 924(c)(1)(A), (B)(ii), and 2; possession of an unregistered firearm in violation
of 26 U.S.C. §§ 5841, 5861(d), and 5871 and 18 U.S.C. § 2; tampering with a
witness by corrupt persuasion in violation of 18 U.S.C. § 1512(b)(3); and
obstructing, influencing, and impeding an official proceeding, and aiding and
abetting in violation of 18 U.S.C. §§ 1512(c)(2) and 2; and two counts of use of an
explosive to commit a felony and aiding and abetting in violation of 18 U.S.C.
§§ 844(h)(1) and 2.

3

counsel for post-trial proceedings.[2]  (Dkt. No. 151 at 20.)  After a hearing, the court

determined that any conflict that Love claimed he had experienced with Boyce

constituted a disagreement over tactics and trial strategy that had not warranted

substitution of counsel, and the court denied the new trial motion.  (Dkt. No. 160.)

The court also noted that, at a hearing shortly before the beginning of trial, the

court asked Love if he wanted Boyce to be his attorney at trial and Love explicitly

stated that he wanted to proceed with Boyce as counsel.  (Dkt. Nos. 150 at 2-4; 160

at 3.)

     In May 2012, Love again moved for new counsel.  (Dkt. No. 176.)  The

court appointed Mark Adams ("Adams") to replace Berg as Love's post-trial

counsel.  (Dkt. No. 184.)  Adams advised the court that he would be filing a motion

for a new trial based on evidence that Sanders had recanted her trial testimony and

had signed a declaration stating that Love was not associated with the bombing

plot ("the Sanders declaration").  The government responded with a declaration by

Sanders stating that Love had asked her to sign a declaration recanting her

---

[2] Love had also filed two prior motions for new counsel—in September 2010 and June 2011.  (Dkt. Nos. 26, 120.)  The court denied Love's first motion for new counsel on October 27, 2010, and reaffirmed this ruling in January 2012 when appointing Berg as Love's post-trial counsel.  (Dkt. No. 160.)  The court construed Love's second motion for new counsel, filed post-trial, as a request to be represented by different counsel at trial and denied the motion as both moot and without merit.  (*Id.*)

1  testimony, but that she had refused because her testimony was true.  (Dkt. No. 169,

2  Exh. A.)  Because of the dispute concerning the authenticity of the Sanders

3  declaration, at Love's request, the court appointed a handwriting expert and

4  ordered Sanders to produce handwriting exemplars.  (Dkt. Nos. 191-93.)  The court

5  ordered Love to file his motion for a new trial based on the Sanders declaration by

6  November 5, 2012. (Dkt. No. 191.)

7       After examining the Sanders declaration and her handwriting exemplars, the

8  forensic document examiner appointed at Love's request determined that the

9  signature on the Sanders declaration was "the result of a cut-and-paste or copy-

10  and-paste."  (Dkt. No. 217, Exh. 1, at 11.)

11       The day Love's new trial motion was due, no motion was filed.  Love

12  instead moved to represent himself because Adams declined to file a new trial

13  motion.  (Dkt. No. 196.)  After conducting a hearing pursuant to *Faretta v.*

14  *California*, 422 U.S. 806 (1975), the court granted Love's motion to represent

15  himself, and Love now appears before the court pro se.  (Dkt. No. 200.)  The court

16  ordered Sanders be returned to a facility within the Southern District of California

17  so that she could be produced as a witness at the hearing on Love's new trial

18  motion if necessary, set a new deadline for Love's new trial motion of December

19  19, 2012, and set a new motion hearing for January 16, 2013.  (*Id.*)  No motion was

received by this deadline.  At the January 16 motion hearing, Love claimed that he had mailed his motion to the court on December 18, 2012.  Although the court never received this motion, it accepted Love's motion for filing at the January 16 hearing, giving him the benefit of the doubt regarding a timely mailing.  (Dkt. Nos. 211-12.)

Love's second motion for a new trial alleges that newly discovered evidence undermines his conviction, that the government failed to disclose exculpatory evidence in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and that his trial counsel was ineffective.  (Dkt. No. 211.)  In setting a briefing schedule, the court permitted Love to file evidence in support of the motion by January 30, 2013.  (Dkt. No. 212.)  Love timely filed two declarations by Johnathan Jamar Sanders.  (Dkt. No. 216.)  In his reply to the government's opposition, Love raised new arguments that the government failed to disclose additional exculpatory evidence and failed to correct a witness's allegedly false testimony in violation of *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  (Dkt. No. 219.)  Love also appended to his reply brief six new declarations in support of his arguments.  (*Id.*)  A district court need not consider arguments raised for the first time in a reply brief, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), and although the court deems these arguments untimely and waived, out of an

6

1    abundance of caution the court nevertheless considered these new arguments and

2    declarations in evaluating Love's claims.

3        The court held a hearing on Love's motion for a new trial on February 15,

4    2013, and allowed Love to call witnesses or submit evidence.  At Love's request,

5    the court ordered the U.S. Marshal's Service to produce Sanders as a potential

6    witness, but Love declined to call her to testify.  In support of the motion, Love

7    submitted compact discs of electronic discovery that had been given to him by

8    Boyce before trial.  After hearing argument, the court ruled that Love's motion for

9    a new trial was denied and that a written order would follow.

10                                    **ANALYSIS**

11       Rule 33 of the Federal Rules of Criminal Procedure vests the court with

12   broad discretion to "vacate any judgment and grant a new trial if the interest of

13   justice so requires."  *See United States v. Hinkson,* 585 F.3d 1247, 1263 (9th Cir.

14   2009) (en banc).  Where, as here, a defendant seeks a new trial on the basis of

15   newly discovered evidence,[3] the defendant must satisfy a five-

_____

[3] A motion for a new trial based on newly discovered evidence must be filed within three years after the verdict.  Fed. R. Crim. P. 33(b)(1).  A motion for a new trial based on any ground other than newly discovered evidence must be filed within 14 days after the verdict.  Fed. R. Crim. P. 33(b)(2).  Because Love filed the motion currently before the court more than 18 months after the verdict, Love's claims of ineffective assistance of counsel, government misconduct, and the claims in the reply brief are time barred unless based on newly discovered evidence.  As

7

part test:

> (1) the evidence must be newly discovered; (2) the failure to discover the evidence sooner must not be the result of the defendant's lack of diligence; (3) the evidence must be "material" to the issues at trial; (4) the evidence may not be (a) cumulative or (b) "merely impeaching"; *and* (5) the evidence must indicate that a new trial would "probably" result in acquittal.

*Hinkson*, 585 F.3d at 1257 (quoting *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005)).  The requirement that the newly discovered evidence be likely to produce an acquittal is "a stringent one."  *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985).  Newly discovered evidence is unlikely to indicate that a new trial would "probably" result in acquittal when it is outweighed by evidence sufficient to support the defendant's conviction.  *United States v. Berry*, 624 F.3d 1031, 1043 (9th Cir. 2010).  Newly discovered evidence that impeaches trial testimony does not establish a probability that a new trial would result in acquittal if the jury has sufficient evidence to convict the defendant even without the impeached testimony.  *Id.*

## I. NEWLY DISCOVERED EVIDENCE REGARDING CULPABILITY

### A. Declaration of Ella Sanders

As part of his second motion for new trial, Love offered the Sanders

---

noted in § II, a motion for new trial is not the vehicle for challenging ineffective assistance of counsel.

1    declaration.  He also submitted a declaration from Johnathan Jamar Sanders (no

2    relation to Ella Sanders), with whom Love was incarcerated in 2012, discussing the

3    Ella Sanders declaration ("the Johnathan Sanders declaration").  (Dkt. No. 216 at

4    3.)  The court treats this evidence, discovered after the trial, as newly discovered

5    and considers timely the motion for a new trial to the extent it rests on this

6    evidence.

7          One of the government's key witnesses at trial was Ella Sanders, a close

8    friend of Love and a co-conspirator in the bombing.  Sanders testified that, at

9    Love's instruction, she performed various activities in furtherance of the

10   conspiracy, including purchasing gun powder and stealing items later used to make

11   bombs.  (Dkt. No. 136 at 44-47, 54-55.)  Love often rewarded her with crack

12   cocaine.  (*Id.* at 43, 48, 58, 76.)  Sanders also testified that Love directed her,

13   Robinson, and Carlock to test multiple pipe bombs before the bombing of the

14   federal courthouse.  (*Id.* at 37-43, 62-65, 70-74.)  Sanders further testified that on

15   the night of the bombing, under Love's supervision, she helped him and Carlock

16   wrap a pipe bomb in duct tape and later heard from Robinson that Carlock "blew

17   up something."  (Dkt. No. 104 at 77-79, 82.)

18         While incarcerated after trial, in June 2012, Love claimed to have received

19   from Sanders the Sanders declaration, which stated that Sanders had testified

9

falsely about Love and that Love had no involvement in the courthouse bombing. (Dkt. No. 219, Exh. K.)  Love argues that this declaration constitutes newly discovered evidence warranting a new trial.  After Love produced the Sanders declaration, the government obtained a signed declaration from Sanders stating that Love had asked her to sign the declaration he submitted to the court, but that she had refused because it was false.  (Dkt. No. 169, Exh. A.)  The government also introduced the original declaration that Sanders states Love asked her to sign, on which Sanders wrote "NO HELL NO," "because the statements contained in the declaration are not true." (*Id.* at 2, 4-5.)

At Love's request, the court authorized funds for a forensic document examiner chosen by Love to analyze the Sanders declaration and handwriting exemplars in order to determine whether the signature on the Sanders declaration was authentic. (Dkt. Nos. 191, 193.)  After reviewing the documents, the expert opined that the "signature" appearing on the Sanders declaration was "the result of a cut-and-paste or copy-and-paste" of Sanders's signature taken from an advice of rights and waiver form signed by Sanders in May 2008.  (Dkt. No. 217, Exh. 1, at 11.)  Despite his earlier request that Sanders be produced as a witness for the hearing on this motion and despite her presence in the courthouse and availability to testify as a witness on the day of the hearing on this motion, Love declined to

1   call her to testify, choosing instead to rest on his submitted declarations.

2       Love also introduced a declaration from Johnathan Sanders to reinforce the

3   authenticity of the Sanders declaration.  The declaration, which recounts Johnathan

4   Sanders's conversations with Love and other inmates, consists primarily of

5   hearsay, and the crucial part of the affidavit is ambiguous hearsay: "Love stated it

6   was cool, because Ms. Sanders left / signed declaration."  (Dkt. No. 216 Exh. 1 at

7   2.)  The statements in the affidavit are of minimal probative value because they

8   largely report what Love himself told or showed Johnathan Sanders.  *See United*

9   *States v. Miller*, 874 F.2d 1255, 1274 (9th Cir. 1989) (describing defendant's

10  hearsay statements made to federal agents and defense attorneys as "too self-

11  serving to have any significant probative value").

12      After examining the Sanders declaration, the Johnathan Sanders declaration,

13  the expert's report, and the other evidence and declarations offered by Love, the

14  court concludes that Love has not demonstrated that the copy of the Sanders

15  declaration that he submitted is authentic.  To the contrary, the court finds that the

16  evidence demonstrates that Sanders's signature is not authentic and represents is a

17  "cut-and-paste" job.  Love did not produce the original document to the court.[4]

_____

[4] Love claims that he mailed the document that he says he received from
Sanders to the court on April 11 or April 12, 2012.  Nothing mailed in the vicinity
of either date by Love was ever received by the court.  Love offers no credible

1    The signature on the copy of the Sanders declaration that Love did produce to the

2    court is visibly cut off below the signature line, and the natural continuations of the

3    letters visible above the signature line are absent below it—strongly supporting the

4    validity of the expert's opinion that it is a "cut-and-paste" document.

5            Love argues that inmates cannot download copies of electronic discovery

6    and that therefore he could not have cut-and-pasted the signature.  His argument

7    does not buttress any claim of authenticity nor does it refute the expert's finding.

8    Even assuming that Love could not have downloaded electronic discovery himself,

9    that proves nothing as to the authenticity of Sanders's signature.  The signature

10   could have been copied either through another means or with the assistance of

11   another individual.

12           When juxtaposed with the signed declaration provided by Sanders to the

13   government stating that her trial testimony was true and that she in fact declined to

14   sign the declaration presented by Love, the court finds that Love has failed to

15   "produce evidence sufficient to support the finding" that the Sanders declaration is

16   what Love claims it to be.  Fed. R. Evid. 901(a).

---

evidence to excuse the failure to introduce the original document.  The absence of
original evidence is yet another reason underlying the court's rejection of Love's
argument.  Given the absence of credible evidence, the court does not credit Love's
multiple claims of mailing documents to the court that were not received.

1    Further, the Sanders declaration does not merit a new trial because at best it

2    is merely impeachment evidence and certainly does not "indicate that a new trial

3    would 'probably' result in acquittal." *Hinkson*, 585 F.3d at 1257 (citation

4    omitted).  Even if the Sanders declaration were authentic, "where the recantation

5    has itself been repudiated, as is the case here, the recantation becomes merely

6    impeaching" and does "not meet the essential requirement that the newly

7    discovered evidence be not merely impeaching." *Lindsey v. United States*, 368

8    F.2d 633, 636 (9th Cir. 1966).

9    And even considered on the merits, not all recantations of trial

10   testimony—even if true—necessarily require new trials, but only those recantations

11   that make it probable an acquittal would result from retrial.  *United States v.*

12   *Krasny,* 607 F.2d 840, 844-45 (9th Cir. 1979).  The Sanders declaration would not

13   probably lead to an acquittal in a new trial because considerable evidence, beyond

14   Sanders's testimony, corroborated Love's role in the bombing.  *See United States*

15   *v. Jackson*, 209 F.3d 1103, 1106 (9th Cir. 2000).  "[T]he jury had before it

16   ample . . . evidence that would lead to a conviction" despite Sanders's alleged

17   recantation.  *Id.* at 1107.

18   **B. Declaration of Johnathan Jamar Sanders**

19   Love also introduced a second declaration from Johnathan Jamar Sanders,

13

1    describing statements allegedly made by Robinson about the bombing.  (Dkt. No.

2    216, Exh. 1 at 1.)  This declaration does not merit a new trial because it is not

3    material and does not indicate that a new trial would probably result in an acquittal.

4           The declaration consists entirely of hearsay, reporting only what Johnathan

5    Sanders says that Robinson told him while the two were incarcerated together in

6    2011.  *See* Fed. R. Evid. 802.  Given that Johnathan Sanders's declaration and his

7    knowledge of any relevant facts are admittedly based wholly on hearsay from

8    Robinson, however, neither the declaration nor Johnathan Sanders's testimony

9    would be admissible at any new trial.  *Id.*

10          Apart from the hearsay hurdle, the statements in the declaration are not

11   material as they are vague and unilluminating.  Johnathan Sanders reports that he

12   and Robinson "had several discussions in detail as to who really was behind the

13   bombing at the San Diego Courthouse," without further explaining "who" that

14   individual might be or how the plot materially differed from the evidence of

15   conspiracy offered at trial.  (Dkt. No. 216, Exh. 1 at 1.)  Indeed, Johnathan Sanders

16   states that Robinson "mentioned that he didn't know what was going on" on the

17   night of the courthouse bombing, highlighting the fact that the information

18   presented in the declaration is not material and would not probably lead to an

19   acquittal if there were a new trial.  (*Id.*)  The court concludes that even giving Love

1    the benefit of doubt and treating the Johnathan Sanders affidavit as new evidence,

2    that evidence does not undermine the verdict.

3          To the extent Love is arguing that Robinson's potential testimony constitutes

4    the newly discovered evidence, his claim also fails.  Neither the government nor

5    Love called Robinson to testify at trial.  Along with its response to Love's new trial

6    motion, the government produced a declaration by Robinson's attorney stating that

7    Love's trial counsel, Boyce, interviewed Robinson prior to Love's trial and

8    concluded that Robinson did not have any exculpatory information to provide.

9    (Dkt. No. 217, Exh. 2.)  Robinson's attorney was present for this interview and

10   confirmed that Robinson did not provide any information that exculpated Love.

11   (*Id.*)  Robinson's attorney also stated that Robinson admitted to the FBI that he had

12   initially minimized Love's involvement in the conspiracy "because he feared

13   reprisal by Love against him or his family," providing a motivation for statements

14   Robinson might have made to Johnathan Sanders that arguably in some vague way

15   minimized Love's involvement.  (*Id.*)  Boyce's pretrial interview with Robinson

16   undermines any claim that Robinson's potential testimony was not discovered

17   prior to trial or could not have been discovered through due diligence.  *See United*

18   *States v. Joelson*, 7 F.3d 174, 179 (9th Cir. 1993) (holding that  potentially

19   exculpatory testimony allegedly discovered after trial was not "newly discovered"

15

1   because the defendant's attorney interviewed the potential witness before trial and

2   decided against calling her to testify).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

4       Love further argues that he has presented newly discovered evidence that

5   Boyce, his trial counsel, performed ineffectively.  Love states that Boyce failed to

6   share with Love a number of compact discs containing discovery materials until

7   shortly before his initially scheduled trial date, neglected to interview a number of

8   witnesses Love claims could have provided exculpatory information, was unable to

9   obtain certain cell phone tower records Love believes were relevant, did not

10  vigorously cross-examine government witnesses about leniency they expected to

11  receive from the government in exchange for their cooperation, and refused to

12  offer into evidence letters Love received from Sanders that he claims undermine

13  her testimony.  (Dkt. Nos. 211, 219.)  In support of these allegations, Love

14  proffered declarations from six witnesses who state that they saw Carlock or

15  Sanders with improvised bombs or heard about Carlock's efforts to research bomb-

16  making methods.  (Dkt. No. 219, Exhs. I, N.)

17      None of Love's claims regarding ineffective assistance of counsel are based

18  on evidence material to Love's guilt or innocence that was newly discovered.  The

19  Ninth Circuit has held "that a Rule 33 motion based upon 'newly discovered

16

1    evidence' is limited to where the newly discovered evidence relates to the elements

2    of the crime charged" and does not extend to evidence of counsel's effectiveness.

3    *United States v. Hanoum*, 33 F.3d 1128, 1130 (9th Cir. 1994).  Although such

4    evidence may be material to the effectiveness of counsel, it is not material to a

5    defendant's guilt or innocence.  *Id.* at 1130-31.  Accordingly, none of Love's

6    ineffective assistance of counsel claims are based on newly discovered evidence

7    for the purposes of Rule 33 and thus cannot justify the granting of a new trial

8    motion filed more than 14 days after the verdict.  *See Harrington*, 410 F.3d at 601.

9          Even if Love's claims regarding ineffective assistance of counsel were not

10    time barred under Rule 33, Love's first two claims—Boyce's failure to turn over

11    discovery and failure to interview witnesses—were raised in his previous motion

12    for a new trial and have already been addressed by the court.  (*See* Dkt. No. 160.)

13    The court rejected Love's claim that Boyce's failure to timely share the discovery

14    material with him created a conflict, especially because Love acknowledged

15    receiving access to the material by December 2010, more than five months before

16    his trial.  (*Id.* at 13; Dkt. No. 155 at 2.)  The court also found that Boyce's alleged

17    failure to investigate leads provided by Love was a tactical decision that did not

18    create an attorney-client conflict.  (Dkt. No. 160 at 9.)  In denying Love's previous

19    new trial motion, the court noted that Love had stated in open court his desire to

continue with Boyce as his counsel at trial, and the court concluded that Love

failed to demonstrate any breakdown in communication that would have warranted

substitution.  (*Id.* at 2, 8-10.)

As the court noted when Love first moved for a new trial, the Ninth Circuit

has explicitly held that the proper procedure for bringing an ineffective assistance

of counsel claim is not a motion for a new trial pursuant to Rule 33, but instead a

motion collaterally attacking the sentence under 28 U.S.C. § 2255.  *United States

v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997) ("'The customary procedure for

challenging the effectiveness of defense counsel in a federal criminal trial is by

collateral attack on the conviction under 28 U.S.C. § 2255.'  We have rejected the

use of a Rule 33 motion for new trial based on 'newly discovered evidence'

involving the ineffective assistance of counsel." (citations omitted)).  Accordingly,

the court does not rule on the merits of Love's ineffective assistance of counsel

claims, which Love is free to raise in a timely § 2255 motion.

## III. *BRADY* CLAIMS

Love also contends that the government withheld potentially exculpatory

evidence in violation of its obligations under *Brady v. Maryland*, 373 U.S. at 87.

Specifically, Love alleges that the government withheld cell phone tower records

showing the location of Love's cell phone on key dates referred to at trial,

recordings of phone calls Ella Sanders made to Love's home from the Riverside County Jail, recordings of Love's visits to Sanders at the jail, and recordings of Love's visits to Carlock at the GEO pretrial detention facility.  (Dkt. No. 219 at 3-9.)  Love also claims that the government withheld evidence that Sanders and another witness, Julaine Carter ("Carter"), received lenient treatment in state sentences in exchange for their cooperation with the government.  (Dkt. No. 219 at 8-9.)

Love's claim that the government violated its *Brady* obligations fails for two reasons.  First, Love does not point to any newly discovered evidence underlying these claims.  Claims based on newly discovered evidence certainly can include *Brady* claims, but such claims may be asserted more than 14 days after the verdict only if "the *Brady* materials were in the government's possession, and unknown to defendant at the time of trial."  *United States v. Quintanilla*, 193 F.3d 1139, 1148 n.9 (9th Cir. 1999).  Love does not assert that any of the evidence underlying his *Brady* claims was unknown to him at the time of trial.  Love's motion specifically states that the phone calls and visit recordings in question occurred before trial and that Sanders allegedly notified him of her alleged arrangement with the government for leniency in a state case in one of these phone calls.  (Dkt. No. 219 at 8.)  Love also states that prior to trial he asked Boyce to obtain the cell phone

19

1    tower records at issue. (*Id.* at 2-3.) When Love received electronic discovery from

2    Boyce on December 17, 2010, he should have been aware that the cell phone tower

3    records were not included. (*Id.* at 2.) Love provides no evidence, newly

4    discovered or otherwise, supporting his claim that the government offered Carter

5    or Sanders lenient treatment in state criminal cases in exchange for their testimony.

6    (*See id.* at 8-9.) His claims are thus time barred under Rule 33(b)(2).

7         Even if Love's claims were not time barred, they would fail on the merits.

8    To establish a violation of *Brady*, a defendant must demonstrate "(1) the

9    prosecution suppressed evidence, (2) the evidence was favorable to defendant, and

10   (3) the evidence was material." *Quintanilla*, 193 F.3d at 1149; *see also United*

11   *States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc).

12        As to the cell phone tower records, Love has not established that the

13   government had the claimed evidence, let alone suppressed it. The government

14   stated that it had attempted to subpoena the cell site information prior to trial, but,

15   by the time of the subpoena, none of the telecommunications carriers still had the

16   information. Because the government was unsuccessful in its own attempts to

17   subpoena the cell phone tower records, the government never had those records in

18   its possession.

19        Love also alleges that the government withheld recordings of conversations

20

1    Love had with Carlock and Sanders.  The government stated that it turned over in

2    discovery all of the recordings that it possessed from the GEO facility, including

3    14 phone conversations between Carlock and Love and 36 recordings of jail visits

4    between Carlock and Love.  The government was unable to obtain any recordings

5    of visits at the Riverside County Jail and thus has never had any recordings of

6    Love's visits with Sanders.  The government possesses three recordings of phone

7    calls that Sanders made to Love from the Riverside County Jail, all of which were

8    turned over in discovery and were played at trial. (Gov't Ex. 24; Dkt. No. 136 at

9    563-77.)

10          With regard to lenient treatment in state cases, the government stated that no

11   one from the U.S. Attorney's Office contacted anyone in a local district attorney's

12   office requesting that Carlock, Sanders, Carter, or any other trial witness be given

13   consideration in their state cases for any testimony provided in this federal case.

14   Love did not offer any evidence supporting any of his claims that the government

15   possessed any discoverable materials that it failed to turn over.  Accordingly, Love

16   has failed to demonstrate that the prosecution suppressed evidence, and his claim

17   fails on the merits, even if it were not untimely.[5]

_____

      [5] Love clarified at the hearing that he raised this evidence primarily as a
further example of his counsel's deficient performance and failure to investigate,
arguing his attorney should have subpoenaed the cell phone tower records and

## IV. *Napue* Claim

Lastly, Love argues that the government allowed Sanders to present perjured testimony when she testified that the government did not promise her a particular sentence in exchange for her testimony.  Under *Napue v. Illinois*, the government may not knowingly use false testimony to obtain a conviction and must correct false testimony when it appears.  360 U.S. at 269.  Love's claim that the government violated these principles again fails because Love provided no newly discovered evidence in support of this claim.  If Love believed Sanders testified falsely at trial by excluding some aspect of her cooperation agreement that she had informed him of beforehand, he could have objected during trial or filed a new trial motion within 14 days after trial.  Love offers no argument as to the untimeliness of this claim.

Even if Love's claim were not time barred, it fails on the merits because no violation occurred.  At one point in her testimony, Sanders suggested that she was unaware of some aspects of her plea agreement.[6]  Based on this brief exchange,

---

attempted to obtain the jail calls and visit recordings.  To the extent these claims are part and parcel of the ineffective assistance of counsel claims, the court does not consider them at this stage for the reasons stated in § II above.

[6] Q [government attorney].  Now, with regard to this case now and your testifying, is it your understanding that the government may make a recommendation below 30 years in exchange for your cooperation?

Love states that the "government allowed Sanders to testify falsely." (Dkt. No. 219 at 3.) But when the relevant portion of transcript is considered as a whole, it is apparent that Sanders testified that although she was not promised anything by the government, she was testifying pursuant to her plea agreement, that she was cooperating with the government, and that she did not know what sentence the government would recommend:

> Q [Boyce]. . . . Ms. Sanders, in that agreement, the government has to make the recommendation to the court, don't they?
> A [Sanders]. Yes. For myself and Carlock. It's not about Donny. I keep telling you.
> Q. The government–but you have–you're facing a 30-year sentence?
> A. Yes, I am. Along with everybody else.
> Q. You are facing a 30-year minimum mandatory sentence?
> A. Yes, I am.
> Q. Okay. And you haven't been sentenced yet?
> A. No, I haven't.
> Q. And so you don't know what the recommendation of the government is going to be until you are sentenced?
> A. Exactly.
> Q. And you've been subpoenaed here in court to testify in Donny Love's trial; correct?
> A. Yes.
> Q. By the government?
> A. Okay. Yes.
> Q. And you've done that because you've promised to cooperate with the government?

> A [Sanders]. Nobody didn't tell me that.
> Q. Okay. No one promised you anything along those lines?
> A. No. No.

(Dkt. No. 104 at 106-07.)

A. Yes, I have.  Okay.  Yeah.

(Dkt. No. 104 at 123-24.)  Additionally, the government introduced the signed plea

agreement as a trial exhibit and the relevant portions of it were read during

Sanders's examination.  (Ex. 45; Dkt. No. 104 at 116-18.)  Love thus fails to

establish that he is entitled to a new trial based on Sanders's alleged perjured

testimony or the government's alleged violation of *Napue v. Illinois*.  360 U.S. at

269.

Love's motion for a new trial is **DENIED.**

Dated: April 17, 2013

M. Margaret McKeown

HON. M. MARGARET MCKEOWN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation